IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL CULLER<br>43660 Bell Road<br>Lisbon, Ohio 44432<br><br>     Plaintiff,<br><br>  vs.<br><br>EXAL CORPORATION<br>c/o CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>    -and-<br><br>NANCY SPENCER<br>c/o Exal Corporation<br>1 Performance Place<br>Youngstown, Ohio 44502<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO:<br><br>JUDGE<br><br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**(Jury Demand Endorsed)** |

Plaintiff, Randall Culler, by and through undersigned counsel, as his Complaint against Defendants, state and aver the following:

## PARTIES & VENUE

1. Plaintiff Randall Culler is a resident of the City of Lisbon, County of Columbiana, State of Ohio.

2. Defendant Exal Corporation ("Exal") is an Ohio corporation with its principal place of business in the City of Youngstown, County of Mahoning, State of Ohio.

3. Defendant Nancy Spencer is a resident of the State of Ohio.

4. At all times material herein, Spencer was the HR Manager of Exal.

5. At all times material herein, Spencer was acting in the scope and course of her employment at Exal.

6. At all times material herein, Spencer was in a supervisory position over Culler.



7. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. § 1331 in that Culler is alleging federal law claims arising under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq.* Thus, this Court has original jurisdiction over the federal law claim under 28 U.S.C. § 1331.

8. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendants operate and conduct business.

## FACTS

9. Culler was employed by Exal from April 23, 2013 until April 13, 2015.

10. At the time of termination, Culler was in the position of Lithography Operator.

11. Culler was qualified for the Lithography Operator position.

12. Prior to Exal's termination of Culler, Exal never raised any concerns regarding Culler's qualifications for the position.

13. Culler had an exemplary employment record with no history of discipline during his tenure at Exal.

14. Culler regularly received positive reviews and pay raises.

15. On or about January 29, 2015, Culler left work due to illness around 7:35 p.m.

16. Later that night, Culler was pulled over and charged with having drugs in his car.

17. Due to the circumstances, Culler called off of work on January 30, 2015.

18. Culler was scheduled to return to work on February 2, 2015, but was contacted by Spencer and told not to come into work Exal "spoke to their attorney."

19. Culler was made aware that his traffic stop and subsequent charge was reported in the local newspaper.

20. Culler was contacted again by Spencer and told her could return to work on February 3, 2015.

21. On or around February 3, 2015, Culler was given a drug screen upon his arrival at work.



The Employee's Attorney.™

22. Culler failed the drug screen.

23. Defendants suspended Culler for 10 days as a result of the positive drug screen.

24. Spencer advised Culler that, per Exal's policies, he would need to complete a drug and alcohol assessment offered by Exal's Employee Assistance Program.

25. The drug and alcohol assessment is held at Glenbeigh in Rock Creek, Ohio.

26. Culler went to Glenbeigh for his assessment and it was recommended that since Culler had a drug dependency, he should begin an intensive outpatient program.

27. As such, Culler was disabled and a member of a statutorily-protected class pursuant to R.C. §4112.02.

28. Other similarly situated non-disabled Exal employees were permitted to return to work three days after a failed drug screen.

29. Culler was punished more harshly than similarly situation non-disabled employees because of his disability.

30. In order to complete the program outlined by Glenbeigh, Culler submitted an FMLA request to Spencer.

31. FMLA leave was required because of the intensive nature of the drug treatment program.

32. Culler was advised by Defendants that his FMLA would begin after his 10 day suspension was served as a result of the failed drug screen.

33. On or about March 31, 2015, Culler was advised by Glenbeigh that he should instead begin an intensive inpatient drug treatment program also held at Glenbeigh.

34. On or around April 10, 2015, Culler completed his inpatient drug treatment program.

35. On or around April 10, 2015, Culler submitted a medical release to Spencer that stated Culler could return to work immediately.

36. Defendants denied Culler's request to return to work and Spencer told Culler that he needed a clearance form from his counselor and Exal's Employee Assistance Program to return to work.

The Employee's Attorney.™

37. On or around April 13, 2015, Culler saw his intensive outpatient counselor, who recommended that Culler stay on FMLA until April 30, 2015.

38. April 30, 2015 was the original end date on Culler's FMLA leave.

39. Later in the day on April 13, 2015, Culler contacted Spencer to let her know that he would be able to be return to work on April 30, 2015.

40. During the phone call, Spencer informed Culler that his employment was terminated effective immediately.

41. Spencer told Culler that he was being terminated for "being less than honest the day he left."

42. Spencer was referring to Culler leaving work on January 29, 2015 due to illness.

43. Spencer refused to go into any further detail as to why Culler was being summarily terminated while still on FMLA leave.

44. Defendants terminated Culler without justifiable cause.

45. Defendants' reason for terminating Culler was purely pretextual.

46. Defendants based its decision to terminate Culler on his utilization of FMLA leave.

47. Defendants based its decision to terminate Culler based on his disability.

48. There was a causal connection between Culler's FMLA-approved leave, his disability and Defendants' termination of Culler.

49. As a result of Defendants' conduct, Culler suffered physical illness and emotional distress.

**COUNT I: RETALIATORY DISCHARGE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

50. Culler restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

51. Exal is a covered employer under the FMLA.

52. During his employment, Culler suffered from a serious health condition.

53. Culler was forced to use FMLA leave in order to care for and/or treat her serious health condition.

The Employee's Attorney.™

54. At the time Culler elected to use his FMLA leave, he was a qualified employee under the FMLA.

55. After Culler was approved for qualified FMLA leave, Exal retaliated against him.

56. After Culler was approved for qualified FMLA leave, Exal retaliated against him by terminating his employment.

57. Exal willfully retaliated and discriminated against Culler in violation of 29 U.S.C. § 2615(a).

58. As a direct and proximate cause of Exal's conduct, Culler suffered and will continue to suffer damages.

59. As a direct and proximate cause of Exal's conduct, Culler is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

**COUNT II: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION**

60. Culler restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

61. Culler notified Defendants that he had a disability.

62. Defendants acknowledged that Culler was disabled.

63. Culler' disability substantially impaired one or more of his major life activities.

64. Despite his disabling condition, throughout his employment Culler was fully competent and qualified for the position of Lithography Operator at Exal.

65. Culler was still able to perform the essential functions of his job.

66. Defendants treated Culler differently than other similarly-situated employees based on his disabling condition.

67. Defendants terminated Culler' employment based on his actual and/or perceived disability.

68. R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.



69. Defendants violated R.C. § 4112.02 by discriminating against Culler based on his disabling condition.

70. Defendants' termination of Culler' employment based on his actual and/or perceived disability violated R.C. § 4112.02.

71. As a direct and proximate cause of the Defendants' conduct, Culler has suffered and will continue to suffer damages.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. Culler restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. Defendants intended to cause Culler emotional distress, or knew that its acts or omissions would result in serious emotional distress to Culler.

74. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

75. As a direct and proximate cause of Defendants' acts and omissions as set forth above, Culler has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

76. As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Culler suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Randall Culler respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Defendants to abolish discrimination, harassment, and retaliation.

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years.

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees.

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints.

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions.

(b) Issue an order requiring Defendants to expunge Culler' personnel file of all negative documentation.

(c) For an award against Defendants of compensatory and monetary damages to compensate Culler for emotional distress, personal injury, property damage and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) For an award of punitive damages against Defendants in an amount in excess of $25,000;

(e) For an award of reasonable attorney's fees and non-taxable costs for Culler' claims as allowable under law;

(f) For an order requiring Defendants to cease and desist from any employment practice which discriminates or harasses against Culler or others on the basis of race, color, religion, sex, military status, national origin, disability, age, or ancestry, or in retaliation against the person because he or she complained about such discrimination.

(g) For an award of the taxable costs of this action; and

The Employee's Attorney.™ 

(h) For an award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        /s/ Sean H. Sobel
        Sean H. Sobel (0086905)
        **THE SPITZ LAW FIRM, LLC**
        The Water Tower Plaza
        25200 Chagrin Boulevard
        Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        Fax:    (216) 291-5744
        Email: sean.sobel@spitzlawfirm.com

*Attorney for Plaintiff Randall Culler*



## JURY DEMAND

Plaintiff Randall Culler demands a trial by jury by the maximum number of jurors permitted.

/s/ Sean H. Sobel
Sean H. Sobel (0086905)

